**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**SARAH ADAMS-LIPA and
ANDREAS LIPA,**

    **Plaintiffs,**

**v.**                                                         **Case No. 8:08-cv-1783-T-30MAP**

**TDS TOWN HOMES (PHASE 1) LLC,**

    **Defendant.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Plaintiffs Sarah Adams-Lipa and Andreas Lipa's Motion for Summary Judgment (Dkt. 17) and Defendant's Response to the same (Dkt. 20). The Court, having considered the motion, response, and being otherwise advised on the premises, concludes that the motion should be denied.

**Summary Judgment Standard**

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986)(emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. Id. Throughout this analysis, the judge must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in his or her favor. Id. at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. Celotex Corp., 477 U.S. at 324. The evidence must be significantly probative to support the claims. Anderson, 477 U.S. at 248-49.

This Court may not decide a genuine factual dispute at the summary judgment stage. Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir.1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248; Hoffman v. Allied Corp., 912 F.2d 1379 (11th Cir. 1990). However, a conflict in substantial evidence to pose a jury question must exist. Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989).

## Background

In May 2004, Plaintiffs Sarah Adams-Lipa and Andreas Lipa entered into a purchase agreement with Tierra Del Sol Resort, Inc. for the purchase and sale of an unbuilt residential unit, identified as Building M39, Unit E of the Tierra Del Sol Resort Subdivision in Polk County, Florida. In the following months, Plaintiffs paid a total deposit of $61,680.00 in two installments.

In December 2006, Defendant TDS Town Homes (Phase 1) LLC ("TDS"), as the successor and assignee to Tierra Del Sol Resort Inc., requested that Plaintiffs sign a new contract for the purchase of an "upgraded" residential, Building T38, Unit H in the Monaco of Tierra Del Sol Resort Subdivision in Polk County, Florida. As part of the contract, the Plaintiffs agreed to pay an increased purchase price of $525,000 and TDS promised completion of the unit within two years. The deposits that Plaintiffs made on the first unit was transferred to the contract for the upgraded unit. This replacement purchase agreement is the subject of Plaintiffs' claims.

Plaintiffs signed the contract on December 22, 2006. Plaintiffs are not citizens of the United States and they were domiciled outside of the United States at all times relevant to this case. Presumably, Plaintiffs mailed the signed contract to TDS from Austria, where they currently reside, to TDS's offices in Orlando, Florida. TDS signed the contract six days after Plaintiffs, on December 28, 2006. By the terms of the contract, the contract became effective on December 28, 2006, which was the date that the last party signed the agreement.

Plaintiffs, through their legal counsel, requested the return of their deposit by e-mail on September 3, 2007, less than one year after the effective date of the purchase agreement. Though the e-mail referenced an earlier telephone conversation between Plaintiffs' counsel and a representative of TDS, there is no discussion in either the email or any of the pleadings as to the reason for Plaintiffs' seemingly sudden request for a return of their deposit. To this date, TDS has not refunded Plaintiffs' deposit.

Plaintiffs filed this action on July 25, 2008, seeking money damages against TDS for violation of the Interstate Land Sales Full Disclosure Act ("ILSFDA" or "the Act"), 15 U.S.C. §1701 et seq. Both parties agree that TDS intended to exempt itself from the reporting requirements of the ILSFDA with the following provision:

> "Seller unconditionally agrees to construct the Unit on or before two (2) years from the effective date of this agreement."

Dkt. 1, Ex. F, ¶ 11. Plaintiffs argue, however, that TDS's obligation to build is illusory and TDS is, therefore, in violation of the ILSFDA for failing to meet the reporting requirements of the Act.

## Discussion

**A.     ILSFDA**

ILSFDA is a consumer protection statute that uses "disclosure as its primary tool" to "protect purchasers from unscrupulous sales of undeveloped home sites." Winter v. Hollingsworth Properties, Inc., 777 F.2d 1444, 1447 (11th Cir. 1985). "As a strict liability statute enacted for the purpose of protecting the public, the ILSFDA should be liberally

construed in favor of the public." Jankus v. Edge Investors, L.P., 2009 WL 961154, *3 (S.D. Fla. 2009).

If a developer does not qualify for an exemption under ILSFDA, it must comply with a number of requirements, including:

> (a) Prohibited activities:
>
> It shall be unlawful for any developer or agent, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce, or of the mails--
>
> (1) with respect to the sale or lease of any lot not exempt under section 1702 of this title--
> . . .
>
> (B) to sell or lease any lot unless a printed property report, meeting the requirements of section 1707 of this title, has been furnished to the purchaser or lessee in advance of the signing of any contract or agreement by such purchaser or lessee.

15 U.S.C. §1703(a)(1)(B). The statute provides several exceptions to these requirements. One of the exceptions is the two-year completion rule, which states in pertinent part:

> (a) Sale or lease of lots generally. Unless the method of disposition is adopted for the purpose of evasion of this chapter, the provisions of this chapter shall not apply to--
>
> . . .
>
> (2) the sale or lease of any improved land on which there is a residential, commercial, condominium, or industrial building, or the sale or lease of land under a contract obligating the seller or lessor to erect such a building thereon within a period of two years.

15 U.S.C. §1702(a)(2).

Because ILSFDA is a federal regulation, it "is interpreted under federal law, and the Department of Housing and Urban Development's ("HUD") regulations are entitled to great deference." Rosenstein v. The Edge Investors, L.P., 2009 WL 903806, *6 (S.D.Fla. March 30, 2009). These HUD guidelines make it clear that the two-year completion obligation need not be unconditional as long as "that commitment is real and not illusory." Stein v. Paradigm Mirsol, LLC, 551 F. Supp. 2d 1323, 1328 (M.D.Fla. 2008).

Accordingly, courts must examine and interpret "the condition(s) in question to determine whether the developer's apparent obligation to construct within two years is real or is rendered illusory by the condition(s)." Jankus v. Edge Investors, L.P., 2009 WL 961154, *7 (S.D. Fla., April 8, 2009).

Additionally, "for purposes of determining compliance with the [ILSFDA], whether construction is ultimately completed within two years is irrelevant; the Court must determine whether the obligation to complete the Unit in two years is an 'unconditional obligation." Harvey v. Lake Buena Vista Resort, LLC, 568 F. Supp. 2d 1354, 1362 (M.D. Fla. 2008).

At issue here is whether other provisions in the sales agreement make the seemingly clear two-year completion obligation illusory.

**B. Effective Date**

Clause 42 of the purchase agreement states as follows:

"Effective Date. The "Effective Date" of this Agreement shall be the date on which the last party to execute this agreement does so."

The HUD guidelines state that "the two-year requirement normally begins on th date the purchaser signs the sales contract." ILSFDA Guidelines, 61 Fed. Reg. 13596, 13603 (1996). Plaintiffs use this sentence to argue that the effective date clause at issue makes TDS's two-year completion obligation illusory. This clause allows either party to sign last and fails to specify a time frame for the final signatures. Plaintiffs argue TDS had "the discretion in its sales to determine when the two period for construction begins by choosing not to sign a contract until it wishes to do so." Dkt. 17, ¶ 23. Plaintiffs signed the sales agreement at issue on December 22, 2006; TDS signed the agreement on December 26, 2006.

Contrary to Plaintiffs argument, it is well established that where a contract is silent as to time, the time frame will be interpreted as a reasonable time. Hammond v. T.J. Litle & Co., 82 F.3d 1166, 1177 (1st Cir. 1996) (citing Bushkin Assocs., Inc. v. Raytheon Co., 815 F.2d 142, 146 (1st Cir. 1987)). See also 17A Am. Jur. 2d Contracts §75. Moreover, inferring a reasonable amount of time is the only conclusion that makes sense. For example, if TDS waited some long period of time before they signed the contract, as Plaintiffs argue is possible, there would be no meeting of the minds as to the terms of the agreement. Especially in a market as volatile as real estate, the environment could change so much that all the material terms to the agreement could be different in a matter of weeks.

Here, Plaintiffs signed the sales agreement in Europe then mailed it, over Christmas, to Florida for TDS to sign. TDS signed the agreement only six days after Plaintiffs signed it. There is no dispute that the six day delay is a reasonable amount of time under the

circumstances. The Court determines that six days is reasonable under these circumstances, as a matter of law.

**C.      Financing Contingency Clause**

The HUD guidelines allow provisions for purchaser financing as long as those clauses do not "alter the obligation of the seller to build." ILSFDA Guidelines at 13603. "For example, if the type and terms of financing are subject to negotiation between buyer and seller, but the buyer is unable to obtain financing as a condition of the obligation to build, then the sale fails for exemption purposes." Id.

Though the sales agreement here has a financing clause, a reading of the plain language of this clause makes clear that the TDS's obligation to build is not contingent on the ability of Plaintiffs to obtain financing. There is no obligation that Plaintiffs secure financing at all. The financing clause explains the rights and obligations of both parties should the buyers choose to secure financing. Additionally, the type and terms of financing were not subject to negotiation. Nothing in the financing clause limits TDS's obligation to complete the unit within two years.

**D.      Casualty Contingency Clause**

"Contract provisions which allow for nonperformance or delays of construction completion beyond the two-year are acceptable if such provisions are legally recognized as defenses to contract actions in the jurisdiction where the building is being erected." ILSFDA Guidelines at 13603. In Florida, acts of god, impossibility of performance, and frustration

of purpose are recognized defenses to nonperformance of a contract. Mailloux v. Briella Townhomes, LLC, 3 So.3d 394, 396 (Fla. 4th D.C.A. 2009).

The sales agreement here includes a casualty contingency clause, ¶27(a), which provides:

> "If a casualty occurs to the Unit prior to closing, SELLER may, in its sole discretion, either cancel this Agreement or rebuild as soon as possible, in which event this Agreement shall be in full force and effect. The completion date shall be extended by the amount of time occasioned by such casualty, but in no event later than two (2) years from the Effective Date of this Agreement. Under no circumstances shall the BUYER have any interest in any insurance proceeds paid on account of said casualty."

There was no other clause regarding acts of God and there is no dispute that both parties intended this clause to act as an "acts of God" clause. Plaintiffs argue that a casualty clause must look to the buyer to cancel the contract, not the seller. Plaintiffs provide no support for this contention. It appears that Plaintiffs argument is based on the "sole discretion" language of the casualty clause.

The HUD guidelines do not allow nonperformance at the seller's sole discretion. However, the phrasing of the entire clause here makes it clear that TDS may not simply cancel the contract at any time it chooses. Under the contract, TDS may only choose nonperformance in those very limited circumstances that fall under "acts of God" under

Florida law. Because those limited circumstances are valid defenses to nonperformance, the two-year obligation is not illusory.

**E.    Clause Invalidity and Severability Contingency**

Finally, Plaintiffs argue that the language of the severability clause in the sales agreement makes the two-year obligation illusory. However, Plaintiffs provide no support for this argument. Severability clauses are enforceable in Florida. Rosenstein at *9 (S.D. Fla. Mar. 30, 2009) (citing Fonte v. AT&T Wireless Servs., Inc., 903 So. 2d 1019, 1024 (Fla. 4th D.C.A. 2005). There is nothing in the language of the severability clause or the contract as a whole that makes the two- year obligation illusory.

It is therefore ORDERED AND ADJUDGED that:

1.    Plaintiff's Motion for Summary Judgment (Dkt. 17) is **DENIED**.

**DONE** and **ORDERED** in Tampa, Florida on June 25, 2009.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2008\08-cv-1783.msj.frm